# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

TIM RENCHEN,                                   Case No. 1:13-cv-752
     Plaintiff,                              Barrett, J.
                                               Litkovitz, M.J.

     vs.

COMMISSIONER OF                                **REPORT AND**
SOCIAL SECURITY,                               **RECOMMENDATION**
     Defendant.


Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI).   This matter is before the Court on plaintiff's Statement of Errors (Doc. 11), the Commissioner's response in opposition (Doc. 14), and plaintiff's reply memorandum (Doc. 15).

## I.  Procedural Background

Plaintiff protectively filed applications for DIB and SSI in October 2010, alleging disability since November 15, 2005,[1] due to left leg pain and arthritis in his feet and toes.   These applications were denied initially and upon reconsideration.   Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Gregory G. Kenyon. Plaintiff, plaintiff's sister, and a vocational expert (VE) appeared and testified at the ALJ hearing. On May 25, 2012, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

---

[1]The ALJ mistakenly reports plaintiff's alleged onset date of disability as May 12, 2005.   *See* Tr. 155-69, 195.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.   42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).   The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.   42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.   If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four steps of the sequential evaluation process.   *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).   Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that the

claimant can perform other substantial gainful employment and that such employment exists in the

national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir.

1999).

### B.    The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact

and conclusions of law:

1. The [plaintiff] met the insured status requirements of the Social Security Act through March 31, 2011.

2. The [plaintiff] has not engaged in substantial gainful activity since May 12, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: gout in left foot, lumbar spine degenerative disc disease, bilateral 'trigger finger' of the long fingers, moderate sensorineural hearing loss, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [plaintiff] has the following limitations: (1) only occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, or scaffolds; (3) no work around hazards, such as unprotected heights or dangerous moving machinery; (4) limited to frequent use of the hands for handling and fingering; (5) limited to performing jobs in environments where he would be exposed to no more than moderate level background noise such as that found in a grocery store or department store; (6) no operation of foot controls with the non-dominant lower extremity; (7) limited to performing unskilled, simple, repetitive tasks; (8) limited to performing jobs requiring no more than occasional contact with co-workers, supervisors, and the public; and (9) no jobs involving rapid production pace work or strict production quotas.

3

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] was born [in] . . . 1957 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.   The [plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because [plaintiff]'s past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from May 12, 2005, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 21-29)

## C.   Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.   *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Richardson v. Perales*,

---

[2]Plaintiff's past relevant work was as a punch press operator.   (Tr. 27, 196, 202-03).

[3]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 3,200 jobs in the regional economy and 382,000 jobs in the national economy such as cleaner, inspector, and packer/bagger.   (Tr. 28, 62).

4

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).   In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.   Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers*, 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).  *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.  Specific Errors

In his Statement of Errors, plaintiff asserts the following errors: (1) the ALJ erred in weighing the medical opinions of his treating sources; (2) the residual functional capacity (RFC) formulated by the ALJ lacks substantial support because plaintiff does not have the requisite "good use of both hands and the fingers" to perform the jobs identified by the VE and because it does not account for plaintiff's "marked" limitations in social functioning and in maintaining concentration, persistence, and pace[4]; (3) the ALJ mischaracterized the record evidence relating to plaintiff's

---

[4]Plaintiff's challenge to the ALJ's RFC formulation comprises two separate assignments of error in the Statement of Errors.   *See* Doc. 11 at 11-12, 14.   The Court will address these arguments together as they both relate to whether the ALJ's RFC formulation is supported by substantial evidence.

5

activities of daily living; and (4) this matter should be remanded under Sentence Six for reconsideration in light of new and material evidence. (Doc. 11).

      1. <u>Whether the ALJ erred in weighing the medical opinions of plaintiff's treating sources</u>.

For his first assignment of error, plaintiff asserts the ALJ erred by giving reduced weight to the opinion of plaintiff's treating psychiatrist and social-worker because "their assessment did not show a diagnosis of depressive disorder." (Doc. 11 at 9). Plaintiff further asserts the ALJ violated the treating physician rule by giving greater weight to the opinion of the one-time consultative examining physician than to the treating sources' opinion. For the following reasons, the undersigned finds that the ALJ did not err in weighing the medical opinion evidence of record.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic

techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)(1)).[5] *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p, 1996 WL 374188 (1996)). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the

---

[5]Title 20 C.F.R. §§ 404.1527, 416.927 were amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion that were previously found at §§ 404.1527(d) and 416.927(d) are now found at §§ 404.1527(c), 416.927(c).

ALJ's application of the rule."   *Gayheart*, 710 F.3d at 544 (quoting *Wilson*, 378 F.3d at 544).

The pertinent evidence is as follows.   On November 10, 2010, plaintiff attended a consultative examination with Martin Fritzhand, M.D., for disability purposes.   (Tr. 237-39). Based on plaintiff's reports and the results of the physical examination, Dr. Fritzhand diagnosed plaintiff with exogenous obesity and painful foot syndrome, left.   (Tr. 237-38).   Dr. Fritzhand opined that plaintniff was capable of performing a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects.   (Tr. 239).   He further opined that plaintiff has no difficulty reaching, grasping, and handling objects and no visual and/or communication or environmental limitations.   (*Id*.).   During the examination portion of his report, Dr. Fritzhand reported that plaintiff presented with normal mental status and intellectual functioning.   (Tr. 238).

Plaintiff saw Douglas Conley, LISW, at Neighborhood Health Care, Inc. from February 2011 to, at least, February 2012 for depression.   (Tr. 325-334).   At his initial evaluation, plaintiff reported that he was taking Celexa as prescribed by his primary care physician for depression, but he had not experienced a change in mood.   (Tr. 302-03, 320-21, 334).   Mr. Conley diagnosed plaintiff with borderline intellectual functioning and dysthymic disorder.   (Tr. 334).   In March 2011, plaintiff reported that he was sleeping better and was planning on taking a week-long trip to stay with his brother.   (Tr. 333).   Mr. Conley observed that plaintiff had a cheerful mood and was friendly and cooperative, and he noted there was "no indication of continued depressive symptoms."   (*Id*.).   In April 2011, plaintiff reported improved mood and slightly improved sleep, but still reported some depressive symptoms such as isolation.   (Tr. 332).   On May 16, 2011, plaintiff reported intrusive images of watching his deceased brother die.   (Tr. 331).   In June 2011, plaintiff reported that he was "ok," but continued to report intrusive thoughts and images of

8

his brother dying.   (Tr. 330-31).   On June 13, 2011, Mr. Conley reported that plaintiff was alert and well-groomed but showed little insight regarding the memories of his brother's death.   (Tr. 330).   On June 20, 2011, plaintiff reported that he was feeling and sleeping better and had less intrusive thoughts after spending the week with his family.   (Tr. 329).   In August 2011, plaintiff was "about 'the same'" and Mr. Conley noted that plaintiff was having even further diminished issues with intrusive thoughts and was "Improved."   (*Id.*).   On August 15, 2011, plaintiff was in a good mood and reported only physical complaints.   (Tr. 328).   September 2011 progress notes include plaintiff's reports that he was having family conflict, feeling isolated, and still seeing "shadows," but was eating ok, had a brighter mood and was "smiling – improved."   (*Id.*). October 2011 notes include ongoing reports of feeling "isolated," though Mr. Conley observed plaintiff as presenting as "cheerful [with] no complaints."   (Tr. 327).   In December 2011, plaintiff presented with increased depression and Mr. Conley reported that he was cooperative but disheveled and he had a flat affect, slowed psycho motor responses, marginal insight and judgment, and fair memory.   (Tr. 326).   Plaintiff continued to report feelings of isolation through January 2012.   (Tr. 325).

On December 12, 2012, Mr. Conley completed a Mental Impairment Questionnaire (RFC & Listings), which was endorsed by N. Shah, M.D.   (Tr. 341-46).   Mr. Conley opined that plaintiff suffered from depressive disorder, not otherwise specified, and reported that plaintiff was cooperative but had a poor response to therapy.   (Tr. 341).   When asked to describe the clinical findings supporting his opinion, Mr. Conley provided that plaintiff was "very limited" due to borderline intellectual functioning and that depression limited plaintiff's ability to interact with others.   (*Id.*).   Mr. Conley opined that plaintiff's prognosis was "poor" and he did not expect improvement.   (*Id.*).   Mr. Conley reported that plaintiff exhibited the following signs and

9

symptoms: anhedonia or pervasive loss of interest in almost all activities; decreased energy; blunt, flat, or inappropriate affect; poverty of content of speech; generalized persistent anxiety; mood disturbance; seclusiveness or autistic thinking; emotional withdrawal or isolation; and sleep disturbance.   (Tr. 342).   Mr. Conley opined that plaintiff's limited cognitive capacity and non-responsive mood limited his ability to function in work-related settings.   (Tr. 343).   Mr. Conley further opined that plaintiff had marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and three episodes of decompensation within a 12-month period.   (Tr. 344). Mr. Conley reported that plaintiff had a current history of one or more years of inability to function outside a highly supportive living arrangement with an indication of continued need for such arrangement.   (Tr. 345).

The ALJ gave little weight to the questionnaire completed by Mr. Conley and endorsed by Dr. Shah.   The ALJ found that the findings of marked limitations were inconsistent with Mr. Conley's progress notes which the ALJ found reflected no more than moderate level depression. (Tr. 27).   In support of this conclusion, the ALJ cited to the February, March, and August 2011 progress notes discussed above which documented plaintiff's reports of isolating behavior, though he was spending more time with his family, and Mr. Conley's observations of a cheerful mood and moderate level depression with increased depression prior to the ALJ hearing.   (Tr. 27, citing Tr. 328-34).   The ALJ determined that the progress notes simply did not indicate a disabling level of depression and therefore Mr. Conley's opinion was accorded only "little weight."   (Tr. 27).

The ALJ's decision to discount the opinion from plaintiff's treating counselor is supported by substantial evidence.   At the outset, the Court notes that it is questionable whether the ALJ was required to treat this as a treating source medical opinion.   There is no evidence in the record

establishing that plaintiff had the requisite treatment relationship with Dr. Shah to invoke the treating physician rule. *See* 20 C.F.R. §§ 404.1502, 416.902 (a treating source is defined as an "acceptable medical source who provides [the claimant], or has provided [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."). *See also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506-07 (6th Cir. 2006) (citing cases) (affirming that the treating physician rule does not apply absent evidence of an ongoing treatment relationship). Given the lack of any evidence in the record establishing that plaintiff treated with Dr. Shah directly, the ALJ was not required to accord any special deference to Mr. Conley's medically endorsed opinion because, as a social worker, Mr. Conley is not an "acceptable medical source." Only "acceptable medical sources" as defined under 20 C.F.R. § 404.1513(a) and § 416.913(a) can provide evidence which establishes the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight.[6] Although information from "other sources" cannot establish the existence of a medically determinable impairment, the information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* Factors to be considered in evaluating opinions from "other sources" who have seen the claimant in their professional capacities include how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment. *Id. See also Cruse v.*

---

[6]SSR 06-03p provides that the Commissioner will consider all available evidence in an individual's case record, including evidence from medical sources. The term "medical sources" refers to both "acceptable medical sources" and health care providers who are not "acceptable medical sources." *Id.* (citing 20 C.F.R. § 404.1502 and § 416.902). Licensed physicians and licensed or certified psychologists are "acceptable medical sources." *Id.* (citing 20 C.F.R. § 404.1513(d)(1) and § 416.913(d)). Licensed social workers are not "acceptable medical sources" and instead fall into the category of "other sources." *Id.* (citing 20 C.F.R. § 404.1513(d)(1) and § 416.913(d)).

*Comm'r of Soc. Sec*., 502 F.3d 532, 541 (6th Cir. 2007).    Not every factor will apply in every case. SSR 06-03p.    Because the ALJ was not bound by the treating physician rule in assessing Mr. Conley's opinion, plaintiff's argument that the ALJ violated the rule is not well-taken.

Assuming, *arguendo*, that Dr. Shah is plaintiff's treating psychiatrist, the ALJ's decision should nevertheless be affirmed because he provided "good reasons" for discounting the opinion. The ALJ determined that Mr. Conley and Dr. Shah's conclusion that plaintiff suffered from marked limitations was inconsistent with Mr. Conley's progress notes, which reflected "at the most, moderate level depression."    (Tr. 27, citing Tr. 325-34).    The ALJ cited to Mr. Conley's February 2011 notes wherein he diagnosed plaintiff with dysthymic disorder; March 2011 notes documenting Mr. Conley's observations that plaintiff presented with a cheerful, friendly, and cooperative mood despite ongoing depressive symptoms; April 2011 notes documenting plaintiff's reports that he was a "feeling pretty good" and had improved mood; and August 2011 notes where plaintiff reported being in a good mood after spending four days with out-of-town family members.    (*Id*., citing Tr. 328, 332-34).    The ALJ acknowledged that these progress notes documented some socially isolative behavior and intrusive thoughts regarding plaintiff's deceased brother, but reasonably determined that the evidence when considered as a whole did not indicate a disabling level of depression.    (*Id*., citing Tr. 325, 329-30).

The ALJ reasonably concluded that Mr. Conley's progress notes do not support the extreme limitations imposed by the treating sources.    The progress notes, when viewed as a whole, do not reflect findings or observations consistent with the marked functional limitations assessed by Mr. Conley and Dr. Shah.    Moreover, while Mr. Conley and Dr. Shah opined that plaintiff had suffered multiple episodes of decompensation this finding is wholly unsupported by the medical evidence of record.    Given the absence of supporting evidence and the inconsistency

12

between the opinion and the progress notes, the ALJ reasonably gave reduced weight to Mr. Conley and Dr. Shah's opinion.   *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (the ALJ may reduce the weight given to an opinion where it is inconsistent with other substantial evidence of record).

To the extent that plaintiff contends the ALJ's decision lacks substantial support because the ALJ rejected Mr. Conley and Dr. Shah's opinion because "their assessment did not show a diagnosis of depressive disorder" (Doc. 11 at 9), the undersigned disagrees.   Nowhere in the ALJ's decision did the ALJ make any such finding.   Rather, the ALJ simply determined that Mr. Conley's progress notes documented "at the most, moderate level depression" (Tr. 27) which was inconsistent with the opinion that plaintiff had marked limitations in social functioning, activities of daily living, and maintaining concentration, persistence or pace due to depression.   As stated above, this conclusion is supported by substantial evidence.

Lastly, plaintiff's argument that the ALJ erred by giving greater weight to Dr. Fritzhand's consultative examination findings and opinion than to Mr. Conley's misses the mark.   Dr. Fritzhand conducted a *physical* examination of plaintiff and his medical opinion on plaintiff's functional capacity related only to plaintiff's physical impairments.   Dr. Fritzhand did not render an opinion regarding plaintiff's mental impairments or funtionality.   *See* Tr. 237-44.   While Dr. Fritzhand found that plaintiff presented with normal mental status and intellectual functioning (Tr. 238), there is no indication whatsoever that the ALJ relied on this finding in assessing plaintiff's functional limitations related to his mental impairment.   Indeed, review of the ALJ's decision reveals that the ALJ relied exclusively on Mr. Conley's progress notes and opinion and on plaintiff's testimony in determining the functional limitations presented by plaintiff's mental impairment.   *See* Tr. 22-23, 26-27.   Plaintiff has failed to identify any evidence from which the

13

Court can reasonably discern that the ALJ improperly relied on Dr. Fritzhand's opinion in assessing plaintiff's mental functional capacity.

For the reasons stated above, the undersigned finds that the ALJ's decision to give "little weight" to Mr. Conley's medically-endorsed opinion is supported by substantial evidence. Plaintiff's first assignment of error should be overruled.

      2.   <u>Whether the ALJ's RFC formulation is supported by substantial evidence</u>.

For his second assignment of error, plaintiff asserts the ALJ erred in formulating plaintiff's RFC by: (1) determining that plaintiff retained the ability to use his hands frequently for handling and fingering; and (2) failing to account for plaintiff's marked limitations in social functioning. (Doc. 11 at 11-12, 14). The Court will first address whether the RFC formulated by the ALJ properly accounts for the functional limitations from plaintiff's "trigger finger" impairment.

      a.   *The "trigger finger" impairment*

The medical evidence relating to plaintiff's "trigger finger" impairment is relatively limited. Dr. Fritzhand examined plaintiff in November 2010. (Tr. 237-45). Plaintiff did not report any concerns over his hands or fingers but stated that his chief complaint was his left leg. (Tr. 237). Manual muscle testing revealed that plaintiff had 5/5 strength in his fingers and normal grasping, manipulation, pinching, and fine coordination bilaterally. (Tr. 241). Dr. Fritzhand concluded that plaintiff had good range of motion, no joint abnormalities, and well-preserved grasp strength and manipulative ability. (Tr. 238). Dr. Fritzhand opined that plaintiff had no difficulty reaching, grasping, and handling objects. (Tr. 239).

The record also includes treatment notes from Arnold Penix, M.D., who treated plaintiff for "trigger fingers" from August 22, 2011 to November 22, 2011. (Tr. 256-58). On August 22, 2011, plaintiff reported "worsening trigger finger" in his right index finger. (Tr. 258). Dr. Penix

examined plaintiff on September 15, 2011, and found that plaintiff had a "flexor click" consistent with a trigger finger in both index fingers.  (Tr. 257).  A three-view radiograph of plaintiff's hand showed mild degenerative change and plaintiff was diagnosed with bilateral trigger finger of the long fingers.  (*Id*.).  Plaintiff received cortisone injections in his fingers and was instructed to follow up in six weeks.  (*Id*.).  Plaintiff returned for follow-up on October 27, 2011.  Dr. Penix reported that plaintiff had "very mild triggering on the left and more significant triggering on the right index finger."  (*Id*.).  Plaintiff and Dr. Penix discussed options and plaintiff opted to undergo a trigger finger release procedure.  (*Id*.).  A handwritten notation from November 11, 2011, relates that plaintiff was doing well after the procedure.  (Tr. 256).  Plaintiff returned for follow-up on November 17, 2011.  (*Id*.).  Plaintiff was able to move his finger without any triggering but he did report numbness at the fingertip which Dr. Penix opined would improve with time.  (*Id*.).  At a follow-up visit on March 20, 2012, plaintiff reported that the release procedure provided "good relief of the pain" and Dr. Penix advised plaintiff to stretch to address joint soreness.  (Tr. 348).  Dr. Penix also found that plaintiff's left index finger was no longer triggering.  (*Id*.).  Dr. Penix's plan was to "release him for now" and plaintiff was instructed to follow-up as symptoms warranted.  (*Id*.).

At the March 27, 2012 ALJ hearing, plaintiff testified that he had ongoing problems with his hands which made it difficult to hold onto and not drop objects.  (Tr. 45-46).  Plaintiff further testified that he has ongoing pain which he rated at a five out of ten.  (Tr. 46).  Plaintiff stated that he was expecting to undergo a release procedure for his left index finger.  (Tr. 46-47).  Plaintiff testified that he tried to wash dishes but his sister often would not allow it because he drops them. (Tr. 55).  Plaintiff submitted evidence at the Appeals Council level showing he underwent a release procedure of his left index finger in May 2012.  (Doc. 11 at 12).

Plaintiff argues the ALJ erred by finding that plaintiff retained the RFC to frequently use his hands for handling and fingering given his testimony that he frequently drops things. (Doc. 11 at 12). Plaintiff argues that the medical record supports his testimony and the conclusion that he does not have good use of his hands bilaterally such that the ALJ's RFC lacks substantial support. The Court disagrees.

The ALJ accurately discussed the limited evidence of record regarding plaintiff's hand impairment. *See* Tr. 25. This evidence, related above, demonstrates that plaintiff's right index finger release procedure was effective as it provided him "good relief" and his left index finger was no longer triggering. *See* Tr. 348. Dr. Penix, plaintiff's orthopedist, opined one week before the ALJ hearing that plaintiff had no ongoing issues aside from some numbness which would dissipate with time and stretches. (Tr. 256, 348). Further, the manual testing performed by Dr. Fritzhand revealed that plaintiff retained full strength and use of his hands and the doctor concluded that plaintiff had no hand-related limitations. *See* Tr. 238-39, 241. This evidence substantially supports the ALJ's conclusion that plaintiff retains the RFC to frequently use his hands for handling and fingering.[7]

Plaintiff's has not cited to any medical evidence or opinion demonstrating that the ALJ's RFC formulation does not adequately accommodate his trigger finger impairment. To the extent plaintiff cites to his sister's and his own testimony that he has problems grasping or holding onto objects and often drops things, the ALJ considered this evidence but did not credit these allegations as they were inconsistent with the preponderance of the opinion and medical evidence of record. (Tr. 24-25, 27). Plaintiff does not challenge the ALJ's credibility finding, nor does he

---

[7]The Court may not consider the evidence of the May 2012 procedure submitted to the Appeals Council. The Court's substantial evidence review is limited to evidence before the ALJ. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 149, 148-49 (6th Cir. 1996).

cite to any medical evidence of record which supports his claim.   Consequently, there is no basis for finding that the ALJ erred in assessing plaintiff's credibility or finding that he retained the RFC to frequently use his hands for handling or fingering.

      b.   *Social functioning and concentration, persistence, and pace*

Plaintiff asserts the ALJ erred in finding he has "moderate" and not "marked" limitations in social functioning and in concentration, persistence, and pace.   (Doc. 11 at 14).   Plaintiff essentially argues that because Mr. Conley's progress notes document plaintiff's self-isolation, he has a "marked" or "extreme" limitation in social functioning.   (*Id.*, citing Tr. 325-28, 332).

The ALJ's conclusion that plaintiff is moderately restricted in social functioning is supported by substantial evidence.   As stated above, the ALJ reasonably discounted the weight given to Mr. Conley and Dr. Shah's opinion that plaintiff is markedly limited in social functioning. Thus, the ALJ was entitled to look to other evidence of record in assessing plaintiff's limitations in social functioning.   The limited evidence of record substantially supports the ALJ's finding of "moderate" limitation in this domain.   Mr. Conley's treatment records reflect that although plaintiff reported that he self-isolates or feels isolated (Tr. 325, 327), plaintiff also reported frequently calling his son (Tr. 325, 327), speaking to his mother every other day (Tr. 327), travelling with his sister to visit his mother and his son (Tr. 327), spending a week out-of-town with relatives (Tr. 329), and going to visit his brother for a week.   (Tr. 333).   The ALJ reasonably relied on this evidence in concluding that plaintiff had moderate social functioning limitations which were sufficiently accommodated by limiting plaintiff to jobs requiring no more than occasional contact with others.

Plaintiff further argues that the ALJ's RFC formulation does not accommodate his limitation in maintaining concentration, persistence and pace because the ALJ did not take into

17

account plaintiff's reports of intrusive thoughts.   In support, plaintiff cites to his reports to Mr. Conley, discussed above, that he sees intrusive images of his brother dying and hearing his brother's voice.   (Doc. 11 at 14, citing Tr. 329-31).   Plaintiff contends that the "frequency of the voices and images are relevant in whether he would be off task more than 15% of the work day" which would preclude employment per the VE's testimony and the ALJ erred by not addressing this evidence when formulating the RFC or questioning the VE at the ALJ hearing.   (Doc. 11 at 14).

Contrary to plaintiff's assertion, the ALJ considered this evidence and reasonably determined that plaintiff had moderate but not marked limitations in maintaining concentration, persistence pace.   The ALJ's determination that plaintiff's depressive symptoms improved over the course of treatment (Tr. 26) is substantially supported by the progress notes.   Plaintiff reported improved mood and presented as cheerful on several occasions, *see* Tr. 327-29, 331-33, and the final mention of these intrusive thoughts was in June 2011 when plaintiff reported he was doing better and having fewer intrusive thoughts.   *See* Tr. 329.   In consideration of plaintiff's reported improvement, it was reasonable for the ALJ to find, based on the record evidence as a whole, that plaintiff was not disabled based solely on these infrequent thoughts regarding his deceased brother.   Moreover, plaintiff cites to no opinion evidence, or any other evidence, to establish that these thoughts have any effect on his ability to maintain concentration, persistence or pace such that the Court can conclude the ALJ erred on this basis.   *See Rabbers*, 582 F.3d at 652 (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)) (plaintiff bears the burden of proof at the first four steps of the sequential evaluation process).   Notably, neither Mr. Conley nor Dr. Shah found that plaintiff suffered from recurrent and intrusive recollections which cause marked distress.   *See* Tr. 342. Because plaintiff has failed to demonstrate that his reported thoughts cause additional functional

limitations not accounted for by the ALJ's RFC formulation, the ALJ did not err by not specifically accounting for them when formulating the RFC or when questioning the VE at the ALJ hearing.

For the above reasons, plaintiff's second assignment of error should be overruled.

3. Whether the ALJ erroneously characterized the record evidence pertaining to plaintiff's activities of daily living.

Plaintiff's third assignment of error relates to whether the ALJ erred by relying on plaintiff's reported activities of daily living, such as washing dishes and vacuuming, to find that he could perform full-time work without taking into account plaintiff's testimony regarding the manner in which he accomplishes these tasks.   Plaintiff contends the ALJ's decision does not comply with Social Security Ruling 96-8p because the ALJ did not credit plaintiff's testimony that he performs these activities of daily living sporadically and at his own pace with frequent breaks. Plaintiff asserts the ALJ's failure to consider the sustainability of work warrants reversal with an award of benefits.   (Doc. 11 at 14-16).

Contrary to plaintiff's assertion, the ALJ considered plaintiff's testimony that he completes household chores in a restricted manner, but concluded that the medical evidence as a whole was inconsistent with the level of functional limitation alleged by plaintiff.   *See* Tr. 22, 24, 26.   The ALJ's decision in this regard is substantially supported by the record evidence.   Plaintiff's challenge to the ALJ's conclusions relate to his testimony as to his physical conditions.   *See* Tr. 44-46, 49-50, 53-55 (plaintiff's testimony regarding his physical functional abilities, including his statements that his trigger fingers cause him to drop items and that he vacuums and mows the lawn but does it infrequently and with breaks because of back pain).   However, the medical evidence contrasts starkly with plaintiff's allegations.   The most thorough physical examination findings in

19

the record are from Dr. Fritzhand, who found that plaintiff was capable of performing a moderate amount of work based on plaintiff's largely normal exam.  *See* Tr. 237-45.  Further, as noted by the ALJ, the limited objective evidence of record does not support a finding of disabling back pain. *See* Tr. 25, citing Tr. 260 (a December 2011 MRI of plaintiff's lumbar spine revealed a disc protrusion at L4-5 but no compression of the nerve root); Tr. 285 (an EMG study done in February 2012 revealed no evidence of active radiculopathy).   Nor is there any opinion evidence in the record corroborating plaintiff's testimony that his physical impairments cause limitations in activities of daily living not accounted for by the ALJ's RFC formulation   *See* Tr. 237-45 (Dr. Fritzhand opined that plaintiff was capable of performing full time work); Tr. 76-81 (non-examining state agency reviewing physician Gerald Klyop, M.D., reviewed the file in December 2010 and determined that plaintiff was capable of performing medium level work); Tr. 85-90 (non-examining state agency reviewing physician Paul Morton, M.D., reviewed the file in March 2011 and also concluded that plaintiff could perform medium level work).   Accordingly, the ALJ's RFC formulation should be upheld.

To the extent plaintiff maintains the ALJ improperly formulated plaintiff's RFC based on his testimony that he completes household chores and watches television without discussing the nature in which plaintiff engages in these activities, the undersigned disagrees.   The opinion, clinical, and objective evidence of record are consistent in that they do not support plaintiff's alleged level of limitation.   Further, plaintiff's reports were deemed less than fully credible by the ALJ and plaintiff does not challenge this finding.   The ALJ properly considered all of the record evidence and reasonably concluded that, giving plaintiff the benefit of the doubt, plaintiff was capable of performing full-time light level work.   The ALJ's decision provides a sufficient narrative discussion regarding how the ALJ came to his conclusions such that it complies with the

dictates of Social Security Ruling 96-8p.  *See* Social Security Ruling 96-8p (1996) ("The RFC

assessment must include a narrative discussion describing how the evidence supports each

conclusion, citing specific medical facts (*e.g.* laboratory findings) and nonmedical evidence (*e.g.*,

daily activities, observations).").

 For these reasons, plaintiff's third assignment of error should be overruled.

 4.  <u>Whether remand is appropriate under Sentence Six to consider new evidence</u>.

 For his final assignment of error, plaintiff asserts that a Sentence Six remand is appropriate

to allow the ALJ to consider medical evidence generated post-hearing.   Plaintiff maintains that

the new evidence – evidence regarding plaintiff's left index trigger finger release from May 30,

2012 (Tr. 234-36) – would result in the ALJ coming to a different conclusion regarding plaintiff's

ability to use his hands frequently for handling and fingering.   Plaintiff therefore contends that

remand is warranted so that the ALJ may consider this new and material evidence.   (Doc. 11

at13).

 New evidence may only be considered in determining whether to remand a matter under

Sentence Six of 42 U.S.C. § 405(g).   Sentence Six of 42 U.S.C. § 405(g) governs whether the

Court is authorized to remand the matter for consideration of new and material evidence that was

not available to the plaintiff at the time of the ALJ hearing.  *Allen v. Comm'r of Soc. Sec.*, 561

F.3d 646, 653 (6th Cir. 2009) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991)).   To be

considered "material" within the meaning of § 405(g), the new evidence 1) must be relevant and

probative to plaintiff's condition prior to the Commissioner's decision, and 2) must establish a

reasonable probability that the Commissioner would have reached a different decision if the

evidence had been considered.  *Sizemore v. Sec'y of H.H.S.*, 865 F.2d 709, 711 (6th Cir. 1988);

*Oliver v. Sec'y of H.H.S.*, 804 F.2d 964, 966 (6th Cir. 1986).

21

The evidence cited by plaintiff does not warrant a Sentence Six remand.   The evidence submitted by plaintiff to the Appeals Counsel consists of: (1) Dr. Penix's March 20, 2012 treatment note (which was included in the record before the ALJ) documenting plaintiff's report of good pain relief in his right finger following the November 2011 release procedure and Dr. Penix's finding that the left finger was not triggering; (2) Dr. Penix's May 17, 2012 note documenting clicking and locking of the flexor tendon of plaintiff's left index finger and Dr. Penix's suggestion he undergo a release procedure; and (3) documentation that plaintiff underwent a release procedure for his left trigger finger on May 30, 2012.   (Tr. 234-36).   While this evidence suggests that plaintiff's use of his left hand may have declined following Dr. Penix's March 20, 2012 examination (Tr. 348), there is no evidence that plaintiff's left finger continued to lock or catch or that he experienced any triggering of the left finger following the procedure on May 30, 2012.   The new evidence shows that plaintiff had trigger finger issues, which the ALJ already determined to be a severe impairment.   The ALJ accommodated this impairment by limiting plaintiff to no more than "frequent" handling and fingering.   The new evidence does not establish that plaintiff continued to have problems following the left trigger release procedure.   Indeed, Dr. Penix's records show that following the *right* trigger finger release procedure in November 2011, plaintiff's right finger continued to respond well.   Without more, the Court cannot conclude it is reasonably probable that the ALJ would have reached a different conclusion had he been presented with the evidence of plaintiff's left trigger release procedure in May 2012.   Accordingly, plaintiff has not established the "materiality" element for a Sentence Six remand.   His request for a Sentence Six remand should be denied.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket

22

of the Court.

Date: ____11/24/2014_____          s/Karen L. Litkovitz_____
                                          Karen L. Litkovitz
                                          United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

TIM RENCHEN,                                    Case No. 1:13-cv-752
      Plaintiff,                              Barrett, J.
                                                Litkovitz, M.J.

      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).